## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| LABORERS' DISTRICT COUNCIL AND CONTRACTORS' PENSION FUND OF OHIO, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>JAMES HARDIE INDUSTRIES PLC., AARON ERTER, and RACHEL WILSON,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Laborers' District Council and Contractors' Pension Fund of Ohio ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon personal knowledge as to Plaintiff, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of documents filed by Defendant James Hardie Industries plc. ("James Hardie" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"), research reports issued by securities and financial analysts, press releases issued by Defendants, media and news reports, and other publicly available information about Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a securities fraud class action on behalf of all those who purchased, or otherwise acquired, James Hardie common stock (previously American Depositary Shares until their conversion to common stock on July 1, 2025) during the period from May 20, 2025 through August 18, 2025, inclusive (the "Class Period"), who were damaged thereby (the "Class"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10 b-5.

2.     James Hardie provides exterior home and outdoor living solutions and markets itself as the number one producer of high-performance fiber cement building solutions in the United States. The Company's business segments include North America Fiber Cement, Asia Pacific Fiber Cement and Europe Building Products. North America Fiber Cement generates about 80% of the Company's earnings.

1

3.      Throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material facts. Despite starting to see North America Fiber Cement customers destocking inventory in April and early May 2025, Defendants made numerous statements on May 20 and 21, 2025 falsely assuring investors that the segment remained strong despite the challenging market environment and expressly denying that inventory destocking was occuring. Investors remained unaware that sales in James Hardie's largest business segment were experiencing inventory loading by channel partners, with the hallmarks of fraudulent channel stuffing, and not sustainable customer demand as represented.

4.      On August 19, 2025, James Hardie shocked investors by belatedly disclosing that sales in North America Fiber Cement declined by 12% due to the customer destocking first discovered by Defendants "in April through May." Aaron Erter, the company's CEO and Executive Director, explained that the results reflect a "normalization of channel inventories" that was expected to impact sales for at least the next two quarters.

5.      On this news, the price of James Hardie's common stock dropped by over 34%, or $9.79 per share, from a closing price of $28.43 per share on August 18, 2025 to $18.64 per share on August 20, 2025.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 1367, and pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa.

8.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1931(b), as the Company has its U.S. corporate headquarters located in this District and conducts substantial business here.

10.     In connection with the acts, omissions, conduct, and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the accompanying certification, which is incorporated by reference herein, purchased James Hardie common stock during the Class Period and has been damaged thereby.

12.     Defendant James Hardie Industries plc. provides exterior home and outdoor living solutions, with a portfolio that includes fiber cement, fiber gypsum, and composite and PVC decking and railing products. The Company's United States headquarters is in Chicago, Illinois and its common stock trades on the NYSE under the ticker symbol "JHX." As of July 1, 2025, James Hardie's ADSs, which were also previously listed on the NYSE under the ticker symbol "JHX," were terminated and replaced with ordinary shares, at a ratio of one for one.

13.     Defendant Aaron Erter ("Erter") has served as Chief Executive Officer ("CEO") and Executive Director of James Hardie at all relevant times.

14.     Defendant Rachel Wilson ("Wilson") has served as Chief Financial Officer ("CFO") of James Hardie at all relevant times.

15.     Collectively, Defendants Erter and Wilson are referred to throughout this complaint as the "Individual Defendants."

16.     The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected.  Because of their positions with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading.  The Individual Defendants are liable for the false statements pleaded herein.

17.     James Hardie and the Individual Defendants are referred to herein, collectively, as "Defendants."

## SUBSTANTIVE ALLEGATIONS

18.     James Hardie designs and manufactures a wide range of fiber cement building products, with manufacturing plants in both the United States and Australia. In the United States and Canada, the largest application for fiber cement building products is in external siding for the residential building industry.

19.     In North America, James Hardie sells its exterior fiber cement products for repair, remodel, and new residential construction to distributors, who then sell the products to dealers or

lumber yards. James Hardie's interior fiber cement products in North America are typically sold through large home center retailers and specialist distributors or dealers. These products are distributed primarily by road, but also to a lesser extent by rail.

20.     James Hardie's direct customers are distributors and dealers, but to increase demand, it markets directly to end-users, including homeowners, architects, builders, and contractors. Market competition stems primarily from substitute products, such as wood or brick, which James Hardie combats through targeted marketing programs to educate its primary consumers on the performance and cost advantages of their products. The Company maintains a specialized sales force and customer service infrastructure in North America for this purpose.

21.     In James Hardie's Form 20-F filed with the SEC on May 20, 2025, Defendants repeatedly highlighted the Company's involvement in promoting and monitoring end-user demand. This includes providing "support directly to the customers of these distribution channels, principally homebuilders and building contractors" and "maintain[ing] relationships with national and other major accounts" through their regional sales management teams.

22.     James Hardie appeared poised to continue growing its North America segment, particularly after announcing it entered a definitive merger agreement with The AZEK Company Inc. ("AZEK"), another leading building products manufacturer with facilities in the United States, in March 2025. The acquisition closed in July 2025 for an implied value of $8.4 billion, including the value of share-based awards and the repayment of AZEK's outstanding debt.

23.     Defendants promoted the merger as expanding James Hardie's reach to the broader "outdoor living" category, including AZEK's decking, trim, and other outdoor building materials. This was expected to significantly elevate James Hardie's brand recognition and marketing in North America. Indeed, Defendant Erter touted their ability to expand AZEK's presence, on May

20, 2025, to "increase brand visibility and product availability to contractors nationwide, further supporting the incremental growth at the contractor level." Defendant Erter further stated that the combination with AZEK was expected to "further accelerate our sales growth" and "[o]ur combined business will be an engine of tremendous cash flow generation."

24.     Despite a "more challenging market environment," Defendant Erter assured investors that the Company was poised to execute its growth strategy and was well-positioned to "sustain" their current "outperformance in our markets." Defendant Erter also clarified that "[o]ur team is poised to execute on FY '26" and "we are seeing normal stock levels out there just as a general statement."

25.     As a result of Defendants' misstatements and omissions reassuring investors that James Hardie's North America segment was poised to deliver on its sales expectations, investors were unaware of known customer destocking that would substantially reduce North America sales and impact subsequent quarterly results.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

26.     The Class Period starts on May 20, 2025, when James Hardie held an earnings call with analysts and investors about its reported financial results for its fiscal 2025 fourth quarter. On the call, Defendant Erter spoke confidently about North America growth during the May 20 earnings call, despite the challenging market environment, stating: "Our *full year business results demonstrate the inherent strength of our unique value proposition and the underlying momentum in our strategy against a softer market environment.* We delivered 2.95 billion standard feet of volume in North America, within the range we guided to a year ago despite softer end market demand than we had originally anticipated."

27.     On the same call, an analyst explicitly targeted information about industry destocking, asking:

> Aaron, just I want to talk about the channel at the moment. Quite clearly, the end market demand is soft. This selling season didn't transpire as expected. So just wondering ***if you can give us a sense of what you're seeing in the channel, how you're thinking about channel inventory levels and whether there is risk of destocking just going back to the experience in 2022***. So just seeing if you're seeing anything like that at the moment or whether you're happy with channel inventories at the moment?

28.     In response, Defendant Erter expressly denied any such problems, stating:

> Yes. So look, I think as we look at the channel, and it's different for different customers, of course, but in general, ***I would say that we are seeing normal stock levels out there just as a general statement***.
>
> If we think about from a repair and remodel standpoint, and look, one of the things that is always one of my favorite things to do is be able to be out with our customers. So I was able to be with hundreds of them at IBS. I was able to be with many of them at our James Hardie events, whether that be at our Contractor Summit, our James Hardie Invitational, and more recently, just being out in the field with our contractors.
>
> So from a large homebuilder standpoint, I think you're seeing some of the press out there with different blips on the radar. But I think we're going to see a challenge from a large homebuilder standpoint as we look at single-family new construction. If we look at R&R, it continually is soft out there, and that's some of the comments that we talked about as we started this call.
>
> But as I said before, Keith, look, with that said, there's still a lot of share out there for us to be able to go out and get after. And I do believe we have the strongest value proposition. We're partnering with our dealer partners. We're partnering with our contractors. We're partnering with our large builders as we bring in differentiated solutions. And no matter what the environment, we're going to go out and win.

29.     Another analyst asked, "Just wanted to get a feel for how things have progressed this quarter in the U.S. that things kind of slowed down significantly March through to April but have started to pick up since. Is that what you're hearing on the ground?"

30.     Defendant Wilson responded, "I think what we are saying is that we're being a little bit more conservative in the uncertainty in the markets right now. ***We are seeing performance in***

*the month to date as we would expect. But look, we're going to be a little cautious out there. And*

*our guidance is reflective of that. But again, we are performing very much to our plan*."

31.    On the same call, Defendant Erter also touted the performance of James Hardie's

sales team in its North America segment, stating:

> Key to our success has been our ability to rapidly onboard new contractors to the ALLIANCE, our loyalty program that we will continue to grow and enhance over the coming years. ***Approximately 40% of new contractors added this year were introduced to the program by a customer sales representative, a clear proof point of how we have amplified our commercial efforts by leveraging our deep partnership with our customers***, leading to not just hundreds but thousands of feet on the street.

> Importantly, as we accelerate sales with siding and decking contractors to capture the vast opportunities that lie ahead, ***the size and strength of our sales force and the alignment with our customer sales teams underscores our supreme confidence in achieving our commercial synergy commitments.*** Nobody in the industry has a sales force like James Hardie.

32.    The next day, James Hardie' May 21, 2025 earnings release stated:

> In North America, the Company is ***outperforming its end markets through a superior value proposition and driving leading margins despite raw material headwinds. James Hardie's significant material conversion opportunity and investments across the North American manufacturing footprint have positioned the Company well to capitalize as the market returns to growth and the long-term housing fundamentals play through.*** The Company is investing across the value chain and growing its contractor base to capture the repair & remodel opportunity. Similarly, in new construction, efforts to deepen exclusivity and increase trim attachment rates support growth and share gain with large homebuilders.

33.    The release also quoted Defendant Erter as stating:

> Over the past five years, our North American business has grown the top line at a +10% CAGR and expanded Adjusted EBITDA margin by more than +400bps, ***a clear demonstration of the inherent strength of our value proposition and the underlying momentum in our strategy. Our conviction is as strong as ever in achieving our long-term aspirations for North America Fiber Cement, namely to grow revenue double-digits, expand EBITDA margins by another +500 basis points, and triple our EBITDA***. I am confident in the future of James Hardie as we continue building on these successes and accelerate our growth strategy.

34.    Speaking on James Hardie's market outlook, Defendant Erter stated:

8

More recent, broader macroeconomic uncertainty could further impact the cost of home construction and weigh on consumer sentiment, influencing demand. As a result, in North America, which represents approximately three-quarters of our total net sales we are prudently planning for market volumes to contract in FY26, including a fourth consecutive year of declines in large-ticket repair & remodel activity. ***Despite these near-term headwinds, our brand and the attractiveness of our value proposition to customers has and will enable James Hardie to structurally grow through expansions and contractions. We will continue to navigate through the current backdrop, focusing on outperforming our end-markets to drive top- and bottom-line in FY26, consistent with our prior planning assumptions.***

35.     The statements referenced above in ¶¶26-34 were materially false and/or misleading when made because they failed to disclose the following adverse facts pertaining to James Hardie's North America segment, which were known to Defendants or recklessly disregarded by them as follows: (a) primary consumer demand and growth in James Hardie's North America segment were deteriorating; (b) overstocking was the primary driver of North America growth during the Class Period, not primary consumer demand; (c) a result, there was excessive inventory at James Hardie's North America distributors.

36.     The truth about Defendants' misrepresentations was finally revealed on August 19, 2025, when James Hardie reported that North America Fiber Cement sales declined by 12%, Q1 2026 profit declined by 29%, and projected lower-than-expected fiscal 2026 earnings. James Hardie admitted that its disappointing results largely reflect "***expected normalization of channel inventories*** due to moderating growth expectations by our customers ***as uncertainty built throughout April and early May***." Defendant Erter also indicated that this "normalization" would continue, stating, "we believe it is prudent to plan for more cautious order patterns and ***defensive inventory positioning*** at our channel partners, exacerbated by the slower seasonality of new construction ***into the back half of the calendar year***."

37.     While Erter claimed that he previously "talked about inventory being relatively normalized" on the May 20, 2025 conference call, James Hardie had projected that North America

net sales growth would be "up low single-digits," and an analyst from MST Financial Services challenged the implication that issue had been disclosed, stating, "So you mentioned we spoke about it at the last quarter, which we certainly did and that was 7.5 weeks into the quarter. So the destocking into the second half of the quarter must have been quite severe." In response, Erter provided more detail on the inventory destocking timeline, stating:

> Let me give you a little bit of a time line when we think about inventory here. We talked -- just talked about it, but I'll reiterate it again. **So Q4 FY '25 in March, we sold our customers prepared for growth. right? You think about the time, the election ended up happening in November, people were ready for growth.** Look, and we talked about inventory not too high, but full well positioned for growth in the building season out there. As we got into April, we cited this on the call, a little bit of noise, a little bit of uncertainty. You get into May, we have our call, June environment softening. As we got into April, people were managing their inventory, right? **So we already started to see a little bit of that destock as you talk about April through May.** And then look, as we got into July, June, it was softening and then as we got into July, we really saw customers getting into defensive inventory posture.

38.     Thus, despite starting to see the destock in April and early May, Defendants made numerous statements on May 20 and 21, 2025 falsely assuring investors that the North America segment remained strong despite the challenging market environment and denying that inventory destocking would be an issue.

39.     On this news, James Hardie's common stock price fell by $9.79, or 34.44%, to close at $18.64 on August 20, 2025.

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ADDITIONAL SCIENTER ALLEGATIONS

41.     As alleged herein, Defendants acted with scienter in that they knew the public documents and statements issued or disseminated in the name of the Company were materially

false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents and in actions intended to manipulate the market price of James Hardie's common stock as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding James Hardie, their control over, and/or receipt or modification of, James Hardie's allegedly materially misleading misstatements, and/or their associations with the Company that made them privy to confidential proprietary information concerning James Hardie, participated in the fraudulent scheme alleged herein. The adverse events at issue also involved James Hardie's main source of revenue, the North America segment.

42.    As such, the Individual Defendants knew or were reckless in not knowing of the undisclosed facts detailed herein.

## LOSS CAUSATION/ECONOMIC LOSS

43.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

44.    On August 19, 2025, James Hardie disclosing that sales in North America Fiber Cement declined by 12% due to the customer destocking first discovered by Defendants "in April through May." Defendant Erter also stated that "normalization of channel inventories" was expected to impact sales for the next two quarters.

45.    On this news, the price of price of James Hardie's common stock dropped by over 34%, or $9.79 per share, from a closing price of $28.43 per share on August 18, 2025 to $18.64 per share on August 20, 2025.

46.     The decline in James Hardie's stock price is directly attributable to the announcement of inventory overstocking in the North America segment, and the associated sales decline and disappointing 1Q 2026 results.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

47.     Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted in this complaint against Defendants are predicated in part upon material omissions of fact that Defendants had a duty to disclose.

48.     In the alternative, Plaintiff is entitled to rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a)  Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b)  The omissions and misrepresentations were material;

c)  The Company's common stock traded in efficient markets;

d)  The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e)  Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

49.     At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market

communication mechanisms, including through regular disseminations of press releases on the major news ire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

51.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired James Hardie common stock between May 20, 2025 through August 18, 2025, inclusive. Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

54.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a)  Whether Defendants violated the Exchange Act;

    b)  Whether Defendants omitted and/or misrepresented material facts;

    c)  Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d)  Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e)  Whether the price of the Company's stock was artificially inflated; and

    f)  The extent of damage sustained by Class members and the appropriate measure of damages.

55.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

56.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**
**For Violations of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**
**(Against All Defendants)**

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

14

59. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

61. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**COUNT II**
**For Violations of §20(a) of the Exchange Act**
**(Against the Individual Defendants)**

62. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63. Defendants acted as controlling persons of the Company within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiff to be false or misleading both prior to and

immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading. By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

C.      Awarding Plaintiff and other members of the Class their reasonable costs and expenses in this litigation, including attorneys' fees, experts' fees and other reasonable costs and disbursements; and

D.      Awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: October 24, 2025                    Respectfully submitted,

                                           */s/ Katrina Carroll*
                                           Katrina Carroll
                                           **CARROLL SHAMBERG LLC**
                                           111 W. Washington Street

16

Suite 1240
Chicago, IL 60602
(872) 215-6205 phone
katrina@csclassactions.com

*Local Counsel for Plaintiff*

Jeffrey C. Block (*pro hac vice* forthcoming)
Jacob A. Walker (*pro hac vice* forthcoming)
Sarah E. Delaney (*pro hac vice* forthcoming)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
jake@blockleviton.com
sarah@blockleviton.com

*Counsel for Plaintiff Laborers' District Council
and Contractors' Pension Fund of Ohio*