**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LABORERS' DISTRICT COUNCIL AND CONTRACTORS' PENSION FUND OF OHIO, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>        v.<br><br>JAMES HARDIE INDUSTRIES PLC., AARON ERTER, and RACHEL WILSON,<br><br>                Defendants. | Case No. 1:25-cv-13018<br><br>Honorable LaShonda A. Hunt<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF BOSTON RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL AND IN OPPOSITION TO COMPETING MOTION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 3

I.      BOSTON SHOULD BE APPOINTED LEAD PLAINTIFF ............................................. 3

         A.      Oklahoma Firefighters' Motion Should Be Denied Because it Blatantly
                Misapplied the PSLRA's Damage Calculation Provisions ..................................... 4

         B.      Boston's Financial Interest Is Larger than Oklahoma Firefighters' Using a
                Feasible Alternative Cost Basis .............................................................................. 7

CONCLUSION, ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlantica Holdings, Inc. v. BTA Bank JSC*,
2017 WL 3731948 (S.D.N.Y. Aug. 29, 2017)................................................................8

*Baron v. HyreCar Inc.*,
2024 WL 3504234 (C.D. Cal. July 19, 2024)...............................................................9

*In re Boeing Co. Aircraft Sec. Litig.*,
2020 WL 476658 (N.D. Ill. Jan. 28, 2020) .................................................................3

*Bousso v. Spire Glob., Inc.*,
2024 WL 4873311 (E.D. Va. Nov. 21, 2024)...............................................................2

*Camp v. Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019)................................................................6

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .......................................................................................3

*Cole v. Health Mgmt. Assocs., Inc.*,
2008 WL 11334897 (M.D. Fla. May 14, 2008)...........................................................7

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ............................................................9

*Gelles v. TDA Indus., Inc.*,
44 F.3d 102 (2d Cir. 1994)...........................................................................................8

*Karp v. Diebold Nixdorf, Inc.*,
2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ..........................................................4, 6

*In re Nike, Inc. Sec. Litig.*,
2024 WL 4579499 (D. Or. Oct. 25, 2024) ..................................................................8

*Nolfi v. Ohio Kentucky Oil Corp.*,
675 F.3d 538 (6th Cir. 2012) .......................................................................................7

*Plaut v. Goldman Sachs Grp., Inc.*,
2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)............................................................6

*Ramirez v. Exxon Mobil Corp.*,
2023 WL 5415315 (N.D. Tex. Aug. 21, 2023)............................................................9

*Randall v. Loftsgaarden*,
    478 U.S. 647 (1986)..............................................................................................................7

*Rodriguez v. DraftKings Inc.*,
    2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)....................................................................7

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
    2021 WL 533518 (S.D. Cal. Feb. 12, 2021).......................................................................5

**Rules & Statutes**

Fed. R. Civ. P. 23 ...............................................................................................................1, 3

15 U.S.C. § 78u-4 *et seq*. ............................................................................... *passim*

Proposed Lead Plaintiff Boston[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of selection of counsel and in opposition to the competing motion.[2]

## PRELIMINARY STATEMENT

Boston is entitled to be appointed as Lead Plaintiff under the PSLRA because it is the ***only*** movant asserting the largest financial interest that ***also*** satisfies the PSLRA's adequacy and typicality requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (requiring the appointment of the movant that "has the largest financial interest" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure").

Pursuant to this Court's Order (ECF No. 22) providing that Lead Plaintiff motions were due by December 22, 2025, Boston timely submitted its Lead Plaintiff motion on December 22, 2025. ECF Nos. 25-26. Oklahoma Firefighters did not. Instead, one day later, after having the opportunity to review Boston's motion and financial interest analysis, Oklahoma Firefighters submitted its own motion claiming losses of ***just over $2,100 (less than 1%) more*** than Boston on its relevant transactions. ECF Nos. 33-34. But ***claimed*** loss is only the starting point of the PSLRA lead plaintiff analysis.

---

[1] All definitions and abbreviations used herein remain unchanged from Boston's previous submission before the Court. *See* ECF Nos. 25-26. Unless otherwise noted, emphasis has been added and citations and internal quotation marks have been omitted throughout.

[2] In addition to Boston, two other putative class members moved for Lead Plaintiff appointment: Laborers' District Council Construction Industry Pension Fund (ECF Nos. 28, 29, 31) and Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters"). ECF Nos. 33-34. Laborers' District Council Construction Industry Pension Fund has since withdrawn its motion. ECF Nos. 39-40. Therefore, Boston and Oklahoma Firefighters are the only competing movants.

Upon inspection, Oklahoma Firefighters' counsel inflated its loss figure by misapplying both the PSLRA's damage calculation provisions **and** its own stated methodology for calculating losses. 15 U.S.C. § 78u-4(e). As explained more fully below, under the PSLRA, when a class member sells the relevant security within 90 days of the end of the class period, that class member's damages, and therefore its financial interest in the relief sought by the class, is by statute limited to the difference between the price paid for the security and the average trading price of the security from the time defendants' fraud was revealed up to that point. *Id.* The loss calculation methodology submitted by Oklahoma Firefighters' counsel is in accord. ECF No. 34-3 (shares retained at the end of the Class Period must be calculated at the "[h]ighter of the Avg. Closing Price or the Actual Sales Price"). Oklahoma Firefighters' counsel did not properly apply this limit in its loss calculation, which inflated Oklahoma Firefighters' damage calculation.

Thus, Oklahoma Firefighters cannot trigger the PSLRA's most adequate plaintiff presumption and is inadequate for appointment because its counsel misapplied crucial provisions of the PSLRA and provided this Court with an artificially inflated loss calculation. *See Bousso v. Spire Glob., Inc.*, 2024 WL 4873311, at * 4-5 (E.D. Va. Nov. 21, 2024) (rejecting a lead plaintiff movant which made an error calculating its loss in its initial motion finding that the movant "does not meet the statutory requirements of a presumptive lead plaintiff under the PSLRA").

Additionally, although Boston submitted a conservative loss calculation in its initial motion, under relevant accounting rules Boston will viably be able to claim a loss of $616,480. As explained more fully below, Boston, like numerous other Class members, acquired its relevant James Hardie shares on July 1, 2025, in exchange for its shares in The AZEK Company ("AZEK") as part of James Hardie's acquisition of AZEK. ECF No. 25-1. Therefore, under relevant Generally Accepted Accounting Principles ("GAAP"), as codified in the Accounting Standards

2

Codification ("ASC"), Boston must value its acquired James Hardie shares at the relevant market price. *See* ASC 805-30-30-7; ASC 820-10-20. Applying a conservative analysis, Boston assigned the share price for acquired James Hardie shares as $26.95, the opening price the day it acquired its James Hardie shares. ECF No. 25-1. However, to advance the best interests and maximize the recovery of the proposed Class, the Court-appointed Lead Plaintiff in this case may well argue at trial that the appropriate cost basis for Boston and similarly situated Class members is $28.08, the closing price of James Hardie shares the same day. *See* ECF No. 33 at 7 (Oklahoma Firefighters claiming that it should be appointed because it is "highly incentivized to maximize the recovery for **all** Class members harmed by Defendants' misrepresentations and omissions"). Using the $28.08 cost basis, Boston's loss is $616,480, even larger than Oklahoma Firefighters' inflated opening proffer. *See* Ex. A attached hereto (loss chart calculating Boston's loss using $28.08 as its cost basis).

Oklahoma Firefighters cannot be appointed as Lead Plaintiff because it suffered a smaller loss than Boston and cannot satisfy the adequacy requirement of Rule 23. Boston's motion should be granted.

## ARGUMENT

### I. BOSTON SHOULD BE APPOINTED LEAD PLAINTIFF

Oklahoma Firefighters cannot trigger the PSLRA's most adequate plaintiff presumption because its counsel provided the Court with a financial interest analysis that was not just irrational, but clearly violates the PSLRA. Lead plaintiff movants are required to provide a financial interest analysis using a method that is "both rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). Courts in this District and across the country routinely reject lead plaintiff movants that make substantial errors in their submissions to the court. *See In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020); *Karp v. Diebold*

3

*Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019).  As explained more fully below, Oklahoma Firefighters' counsel provided this Court with an inflated loss analysis in its initial motion.  Oklahoma Firefighters has therefore failed to meet the PSLRA's *prima facie* adequacy requirement, and its motion must be rejected.

### A.     Oklahoma Firefighters' Motion Should Be Denied Because it Blatantly Misapplied the PSLRA's Damage Calculation Provisions

Oklahoma Firefighters cannot be appointed Lead Plaintiff because its counsel misapplied the PSLRA's damage calculation provisions to its claimed financial interest calculation, artificially inflating its financial interest calculation.  Whether this was gross error or the product of deliberate manipulation matters not, as this fundamental miscalculation renders Oklahoma Firefighters inadequate for Lead Plaintiff appointment.

The PSLRA instructs Class members on how to calculate losses on shares acquired during the Class Period and then held or sold after the Class Period ends.  Beginning when information correcting the fraud is revealed to the market, the Class member must keep a running average of the trading price of the security over the next 90 days.  15 U.S.C. § 78u-4(e).  This average affects the loss calculation in one of two ways.  If the Class member, like Boston, still holds the relevant security after the 90 days, the Class member's financial stake cannot exceed the difference between purchase price paid for the security and the average trading price of the security over the 90 days.  15 U.S.C. § 78u-4(e)(1) (the "lookback average").

If, however, like Oklahoma Firefighters, the Class member sells the security prior to the end of the 90-day period, the Class member's damages cannot be greater than the difference between purchase price paid for the security and the average trading price of the security ***up to the day of the sale***.  15 U.S.C. § 78u-4(e)(2).  Thus, a higher lookback average will decrease investors' losses by lowering the delta between the purchase and sale price.  Of course, this lookback average

4

will vary over the course of the 90 days as the relevant stock price fluctuates. According to Oklahoma Firefighters' submission, it sold 79,551 shares of James Hardie stock, its entire position acquired during the Class Period, within the 90-day period after Defendants' fraud was revealed. ECF No. 34-3. Therefore, the PSLRA unequivocally instructs that Oklahoma Firefighters cannot claim a loss greater than the difference between its purchase price and the average price of James Hardie stock up to the day each share was sold. *See Wasa Med. Holdings v. Sorrento Therapeutics, Inc.,* 2021 WL 533518, at *3 (S.D. Cal. Feb. 12, 2021) (lead plaintiff movant properly valued shares sold during the 90-day period "at the higher of: (i) the sale price or (ii) the average closing price from the end of the Class Period through the date of sale").

Ignoring the statutory text, Oklahoma Firefighters' counsel applies either $20.36 or $20.13 as the share price for all of its James Hardie stock sales. ECF No. 34-3. This is plainly wrong because, as the chart below lays out, the relevant average was higher than $20.36 or $20.13 on three of the days on which Oklahoma Firefighters sold its shares:

| Date of Sales | Shares Sold | Price Claimed by Oklahoma Firefighters | Correct Price Under the PSLRA |
|---|---|---|---|
| 08/27/2025 | 4,600 | $20.36 | $21.0914 |
| 09/04/2025 | 271 | $20.13 | $20.5783 |
| 11/05/2025 | 26,129 | $20.13 | $20.5125 |

Whether the sale prices provided by Oklahoma Firefighters' counsel were actual sales prices or an incorrect calculation of the lookback price, the higher lookback average was the correct price to apply. Using the lower price on each trading day listed above materially inflated Oklahoma Firefighters' claimed loss by improperly increasing the difference between the purchase and sale price. In fact, if the higher (and correct) lookback average price was applied for Oklahoma

5

Firefighters' sales on each of these days, Oklahoma Firefighters' financial interest is unquestionably lower than Boston's.

The timing of Oklahoma Firefighters' motion raises additional concerns. On November 24, 2025, this Court ordered that motions for Lead Plaintiff appointment were due December 22, 2025. ECF No. 22. On December 22, 2025, counsel for Oklahoma Firefighters submitted a notice refuting this Court's deadline and claiming the motions were due December 23, 2025. ECF No. 23. On December 22, 2025, Boston timely filed its motion, conservatively estimating its loss at $530,845. A full day later, Oklahoma Firefighters submitted its motion, conveniently claiming a loss a few thousand dollars greater than Boston based on an incorrect application of the PSLRA's damage provisions. ECF No. 34-3.

Regardless of whether these miscalculations were made in error or a deliberate attempt to boost Oklahoma Firefighters' claimed financial interest in the relief sought by the class just enough to exceed Boston's, they disqualify Oklahoma Firefighters from appointment in this matter. Courts routinely reject movants with similar errors in their motions. *See Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (rejecting a movant in part because of "because of significant errors in the . . . loss calculations accompanying" the motion and the fact that the movant used "the wrong loss calculation" which exaggerated the movant's loss); *see also Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (rejecting movant in part because the Court was "disquieted by the errors contained in the [movants'] original submissions," which exaggerated the movants' loss total); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (rejecting a lead plaintiff movant which made a clerical error excluding transactions from its initial submission, stating the error "speak[s] to a level of carelessness, and causes me to doubt whether [Movant] possesses the necessary adequacy and sophistication to be

6

lead plaintiff"); *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *5-6, *9 (S.D.N.Y. Nov. 12, 2021) (finding a lead plaintiff movant inadequate in part due to inconsistencies in the movant's loss chart and certification). Oklahoma Firefighters' motion for Lead Plaintiff appointment should therefore be denied.

**B.** **Boston's Financial Interest Is Larger than Oklahoma Firefighters' Using a Feasible Alternative Cost Basis**

Even Oklahoma Firefighters' inflated loss is only superior to that of Boston when applying a highly conservative cost basis of $26.95 to the James Hardie shares Boston acquired. Applying the closing day's price of $28.08, Boston's loss is $616,480, again the largest loss of any competing movant.

By way of background, Boston acquired its relevant James Hardie shares as part of James Hardie's acquisition of AZEK on July 1, 2025. As part of this transaction, AZEK shareholders which chose to retain their shares through the day of closing received $26.45 in cash[3] and 1.0340 ordinary shares of James Hardie for each share of AZEK common stock held.[4] *See* Ex. B attached

---

[3] Oklahoma Firefighters may attempt to argue that Boston's loss in James Hardie shares should be netted against the cash payment it received in exchange for its AZEK shares. For the avoidance of doubt, no such netting is required or appropriate. It is axiomatic that additional financial benefits received for acquiring a security do not reduce a plaintiff's recovery in action brought under the Exchange Act. *See Cole v. Health Mgmt. Assocs., Inc.*, 2008 WL 11334897, at *4 (M.D. Fla. May 14, 2008) (refusing to offset a lead plaintiff movant's loss with dividend payments he received from owning the relevant securities); *Randall v. Loftsgaarden*, 478 U.S. 647, 663 (1986) (rejecting argument that a plaintiff's damages in an action under Section 10(b) must be offset by tax benefits plaintiff received from fraudulent transaction); *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 550 (6th Cir. 2012) (rejecting argument that tax benefits received as part of an investment must be subtracted from recovery).

[4] AZEK shares were valued at $54.35 on June 30, 2025 at the close of trading, reflecting the market's valuation of the $26.45 cash payment combined with the perceived value of the James Hardie shares which investors would acquire the next day.

hereto (press release explaining James Hardie's acquisition of AZEK). Pursuant to this transaction, on July 1, 2025, Boston exchanged 73,292 AZEK shares for 75,783 James Hardie shares. ECF No. 25-1.[5] On July 1, 2025, James Hardie stock opened at a price of $26.95 and closed at $28.08.

The appropriate "purchase price" for Boston's acquisition is the market value of James Hardie shares at the time of the acquisition, July 1, 2025. This is because the relevant accounting provisions require that the consideration paid in a business combination be valued at "fair value." ASC 805-30-30-7. GAAP defines fair value as "[t]he price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date." ASC 820-10-20. Therefore, under the relevant accounting rules, it is appropriate for Boston to apply the "fair value" (or market price) of James Hardie shares on the date of acquisition as the cost basis for the transaction. This is not a novel approach. In a similar instance, the court in *In re Nike, Inc. Securities Litigation* applied an adjacent GAAP provision to conclude a lead plaintiff movant properly recorded the "market price" as the cost basis for shares received through a transfer. 2024 WL 4579499, at *5 (D. Or. Oct. 25, 2024).

Boston submitted its initial loss calculation based on the $26.95 opening price to provide the Court with the more conservative estimate of Boston's claimed loss at this early stage.

---

[5] Although Boston did not make open market purchases of James Hardie stock, its acquisition squarely positions it within the Class definition. *See* ECF No. 1 ¶ 52 (defining the relevant Class as "all persons and entities who purchased *or otherwise acquired* James Hardie common stock between May 20, 2025 through August 18, 2025, inclusive"); *see also Gelles v. TDA Indus., Inc.*, 44 F.3d 102, 104 (2d Cir. 1994) ("The Supreme Court has held that the simple exchange of shares in a merger qualifies as a purchase or sale when shareholders become shareholders in a new company."); *Atlantica Holdings, Inc. v. BTA Bank JSC*, 2017 WL 3731948, at *2 (S.D.N.Y. Aug. 29, 2017) ("[A]n exchange of one security for another constitutes a purchase or sale within the meaning of the Exchange Act.").

However, at later stages, the Court-appointed Lead Plaintiff must make the strongest viable arguments to maximize the Class' potential recovery. *See Ramirez v. Exxon Mobil Corp.*, 2023 WL 5415315, at *8 (N.D. Tex. Aug. 21, 2023) (appointing a lead plaintiff as a class representative in part because it was "highly motivated to . . . maximize the recovery not only for itself, but also for the absentee class members); *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *13 (C.D. Cal. July 19, 2024) (appointing a lead plaintiff as a class representative for settlement purposes in part due to its "desire to maximize the settlement recovery"); *see also* ECF No. 33 at 7 (Oklahoma Firefighters claiming that it should be appointed because it is " highly incentivized to maximize the recovery for *all* Class members harmed by Defendants' misrepresentations and omissions"). This includes arguing that Class members such as Boston can measure their loss using the most favorable cost basis practicable, the $28.08 closing price.

Because former AZEK shareholders made up approximately one fourth of James Hardie shareholders after the acquisition (*see* Ex. C attached hereto (press releases explaining that "James Hardie and AZEK shareholders are expected to own approximately 74% and 26%, respectively, of the combined company")) a large amount of the relevant Class will be situated similarly to Boston. Therefore, to advance the interests of all Class members, the Lead Plaintiff will argue that the higher $28.08 closing price should be utilized as the cost basis for those James Hardie shares received in the merger in order to maximize the Class' potential recovery. Under this rubric, Boston's loss exceeds Oklahoma Firefighters' regardless of loss calculation methodology. And any attempt at this stage to undercut that argument and minimize potential recovery for legacy AZEK shareholders should be seen for what it is—a purely self-interested attempt to limit the Class' potential recovery in order to achieve the coveted lead counsel position. *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (court noting that it

was "wary of arguments" by lead plaintiff movants which "limit[] the potential amount of damages").

Boston's $616,480 loss using this cost basis is clearly larger than even Oklahoma Firefighters' inflated $532,973 loss figure. Therefore, Boston has a superior financial interest and should be appointed.

## CONCLUSION

For the reasons set forth above and in its opening brief, Boston respectfully requests that the Court appoint Boston as Lead Plaintiff, approve their selection of counsel, and deny the competing motions.

Dated: January 23, 2026          Respectfully submitted,

**ROBBINS GELLER RUDMAN
& DOWD LLP**

/s/ Frank A. Richter
James E. Barz (IL BAR #6255605)
Frank A. Richter (IL BAR #6310011)
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: (630) 696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Danielle S. Myers (ILND-GB-5711)
Michael Albert
655 W. Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

*Proposed Liaison Counsel for the Class*

10

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville (admitted *pro hac vice*)
Connor C. Boehme (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
fmcconville@labaton.com
cboehme@labaton.com

*Counsel for Proposed Lead Plaintiff and
Proposed Lead Counsel for the Class*

11