**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| LABORERS' DISTRICT COUNCIL AND CONTRACTORS' PENSION FUND OF OHIO, Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br><br>      v.<br><br>JAMES HARDIE INDUSTRIES PLC., AARON ERTER, and RACHEL WILSON,<br><br>             Defendants. | Case No. 1:25-cv-13018<br><br>Honorable LaShonda A. Hunt<br><br><u>CLASS ACTION</u> |

**BOSTON RETIREMENT SYSTEM'S REPLY IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

4935-8417-4219.v1

Oklahoma Firefighters' claim to the "largest financial interest" is built upon a faulty foundation, one constructed on strategic non-compliance with Court deadlines, internal inconsistencies, and mathematical errors.[1]

After declining to comply with this Court's ordered lead plaintiff motion deadline of December 22, 2025 in order to review and assess other movants' lead plaintiff filings, Oklahoma Firefighters submitted its motion on December 23, 2025, claiming a loss just $2,127 higher than Boston's claimed loss.[2] This razor-thin margin is an illusion for two reasons. First, as demonstrated below, Boston possesses a vastly superior financial interest when standard, GAAP-compliant valuation methods – specifically the merger-date closing price – are applied to its shares:



[1]  All definitions and abbreviations used herein remain unchanged from Boston's previous submissions before the Court. *See* ECF Nos. 25-26, 53.  Unless otherwise noted, emphasis has been added and citations and internal quotation marks have been omitted throughout.

[2]  To remove any doubt regarding the strategic nature of this delay, Oklahoma Firefighters' Certification (ECF No. 34-2) and Declaration (ECF No. 34-4) – both of which were signed and dated on December 19 and 22, 2025, respectively – confirm that the movant was prepared to file but its counsel chose to wait until after the Court-ordered deadline had passed to review Boston's proffer.

4935-8417-4219.v1

Second, Oklahoma Firefighters' purported opening loss number is derived from a failure to apply the PSLRA's mandatory lookback price provisions. While Oklahoma Firefighters was forced to file a "Revised Certification" (ECF No. 38-1) to fix an initial transaction error, its counsel has notably failed to correct the far more significant statutory miscalculations that inflated the loss on three of its sales by more than $13,480.

Boston – the only movant to timely comply with the Court's orders and provide a statutorily compliant loss calculation – is the most adequate plaintiff to lead this Class.

## I.     ARGUMENT

"The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) either has filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23." *Bang v. Acura Pharms., Inc.*, 2011 WL 91099, at *2 & n.2 (N.D. Ill. Jan. 11, 2011). "This presumption may be rebutted if there is ***proof*** that the presumptively most adequate lead plaintiff either will not fairly and adequately protect the class' interests or is subject to some unique defense that renders the lead plaintiff incapable of adequately representing the class." *Id.* at *2. "Mere innuendo and inferences will not suffice to support allegations of atypicality, conflict of interest or unique defenses." *In re SemGroup Energy Partners, L.P., Sec. Litig.*, 2008 WL 4826318, at *2 (N.D. Okla. Oct. 27, 2008). Rather, "exacting proof is needed to rebut the presumption." *Murphy v. JBS S.A.*, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017).

### A.     Boston Has the Largest Financial Interest Under Standard Valuation Models

"While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Tr. v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). More specifically, "courts look to the plaintiff with the greatest net loss during

2

the proposed class period." *Bang*, 2011 WL 91099, at *2; *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at 4 (N.D. Ill. Mar. 15, 2005) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period."). To that end, when selecting the movant with the largest financial interest, courts find that even marginally greater losses outweigh meaningful advantages in any other (or all three) *Olsten-Lax* factors. *See, e.g.*, *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, at *3 (M.D. Tenn. Jan. 9, 2019) (appointing movant with the largest loss, despite a competing movant's larger shares purchased (both total and net) and greater net expenditure); *Guzman v. Ford Motor Co.*, 801 F. Supp. 3d 706, 714 (E.D. Mich. 2025) (same).[3] As reflected in the comparison below, Boston incurred a net loss of $616,480 on its investment in James Hardie securities during the Class Period – nearly $83,500 greater than Oklahoma Firefighters' inflated opening loss number.

### 1. Utilizing the Merger-Date Closing Price Is the Legitimate and Standard Valuation Method

Boston's larger loss is confirmed when its merger-acquired shares are valued using the July 1, 2025, closing price of $28.08. Under GAAP (ASC 805 and 820), acquired assets must be recorded at "fair value," defined as the market price on the measurement date. In the context of a merger, this is the closing price on the day the deal is finalized. *See Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 370 (7th Cir. 1987) (concluding that sale occurred when the merger closed).

---

[3] *Bally*, 2005 WL 627960, at *4 ("Not surprisingly, some of the lead plaintiff candidates who are in the middle of the pack in terms of losses . . . contend that we should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended by the plaintiff during the class period, citing *Lax* . . . . It is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all . . . . We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period.").

3

The methodology's legitimacy is demonstrated by its widespread use. In *In re Cendant Corporation Litigation*, No. 98-cv-01664 (WHW) (D.N.J. Aug. 28, 1998), which resulted in a historic $3.3 billion settlement (the third largest securities class action recovery ever), the court-approved Plan of Allocation utilized the $32.13 closing price of the securities on the December 17, 1997 date of the merger as the "acquisition price per share" to calculate recognized losses for shares acquired in exchange for other securities. *See* Ex. A attached hereto (*Cendant* Notice of Settlement at 11 of 24).[4]

In *Raby v. Evolv Technologies Holdings, Inc.*, 2024 WL 4252685 (D. Mass. Sep. 20, 2024), Oklahoma Police Pension & Retirement System unsuccessfully challenged the legitimacy of merger-acquired shares. The court rejected the argument that a plaintiff who "acquired his stock pursuant to the terms of a merger agreement, rather than an open market purchase" was subject to unique defenses and appointed the individual investor – with losses calculated using the closing price on the merger date – as Lead Plaintiff over the Oklahoma fund's objections. *Id.* at *3; Ex. B attached hereto (Individual investor's loss chart submitted in *Raby* stating: "Mr. Falk was a shareholder of Evolv Technologies, Inc. prior to the merger agreement with NewHold Investment Corp. On July 16, 2021, he received 116,877 EVLV shares pursuant to the merger agreement. The acquisition price per share, $9.55, was the closing price on July 16, 2021."). Tellingly, while Oklahoma Police Pension & Retirement System challenged the movant's typicality and adequacy, it did not question the propriety of utilizing the market price on the date of the merger as the acquisition price. *See also* Ex. C attached hereto (excerpts of Stipulation of Settlement submitted

---

[4]   The Third Circuit specifically reviewed and approved the Plan of Allocation's treatment of the portion of the class that acquired their Cendant stock in the merger deal. *In re Cendant Corp. Litig.*, 264 F.3d 201, 228 (3d Cir. 2001).

4935-8417-4219.v1

in *In re Old Banc One Shareholders Securities Litigation*, No. 00-cv-02100 (N.D. Ill. Sept. 19, 2007), ECF No. 467-2 at 8 (Plan of Allocation using "the price of Bank One stock on the date of the Merger" as the acquisition price for all class members who received Bank One common stock through the conversion of Old Banc One common stock pursuant to a merger). Applying this standard $28.08 cost basis, Boston's loss is $616,480, far exceeding Oklahoma Firefighters' loss.

Oklahoma Firefighters' counsel attempts to walk a treacherous legal tightrope regarding these shares. The tension between its various representations is irreconcilable. On one hand, Oklahoma Firefighters admits that Boston "suffered damages by exchanging its AZEK shares for artificially inflated James Hardie shares" and should be treated as a full member of the Class. ECF No. 52 at 7 n.2. This concession is no accident; Oklahoma Firefighters recognizes that excluding merger-acquired shares would significantly diminish the overall value of the case, as former AZEK shareholders comprise a large portion of the combined company.[5] Yet, having acknowledged these shares were damaged for purposes of class membership, Oklahoma Firefighters abruptly reverses course for the financial interest inquiry, demanding a valuation methodology that conveniently and artificially eliminates the shares' damages. This creates a fatal inconsistency:

---

[5] The Court should be skeptical of any movant that adopts legal positions intended to limit the potential recovery of a large segment of the Class. Counsel for Oklahoma Firefighters' attempt to undercut Boston's financial interest is a self-interested maneuver to secure the Lead Counsel position at the expense of class-wide recovery. "Such advocacy benefits [Oklahoma Firefighters'] position as lead plaintiff while potentially jeopardizing at the starting gate the interests of many putative class members." *Guzman*, 801 F. Supp. 3d at 714. "It is unclear why a potential lead plaintiff would argue [to decrease classwide damages], unless it was in the best interest of that particular plaintiff. This self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing [Oklahoma Firefighters] lead plaintiff." *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014). A lead plaintiff must be a zealous advocate for ***all*** members, and counsel for Oklahoma Firefighters' equivocation regarding the stake of merger claimants speaks to a level of self-interest that renders it inadequate to serve as a fiduciary.

while conceding the damages are recoverable for the Class, Oklahoma Firefighters argues they are too speculative to establish a lead plaintiff's stake. This logic ignores the fact that the PSLRA's "financial interest" requirement is intended specifically to *approximate damages* – *i.e.*, what the plaintiff can actually recover. Moreover, Boston's pre-Class Period purchase price of AZEK shares is legally irrelevant; under *Colan* and its progeny, the merger exchange is treated as a sale of AZEK shares and subsequent acquisitions of James Hardie shares at the prevailing market price on the date of the merger.[6]

The opposition briefing marks the first occasion on which both movants have proffered their respective loss methodologies simultaneously – without the benefit of Oklahoma Firefighters' strategic one-day head start. When these calculations are finally placed side-by-side in a transparent forum, the disparity is stark and the conclusion inescapable – Boston's financial stake is superior. Boston's loss stands at $616,480. In contrast, Oklahoma Firefighters – even utilizing its counsel's inflated and mathematically flawed methodology – claims a loss of only $532,972. Because Boston's calculation is rooted in GAAP and established practice, including in the Seventh Circuit, its status as the movant with the largest financial interest cannot be credibly disputed.[7]

---

[6] Oklahoma Firefighters' attempt to offset Boston's losses by the cash component of its exchange of AZEK shares is meritless. The Supreme Court has held that the measure of damages in § 10(b) cases is the difference between the fair value of all that the plaintiff received and the fair value of what he would have received had there been no fraudulent conduct. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1972). It is axiomatic that external benefits (like tax breaks or, by extension, cash components) do not reduce a recovery. *Randall v. Loftsgaarden*, 478 U.S. 647, 663 (1986). To illustrate, if a party exchanges a $5,000 painting for $4,500 in cash plus 10 shares of fraud-inflated stock, the injury is the artificial inflation in those 10 shares. The cash portion of the deal is a constant that does not fluctuate with the fraud. Therefore, the original purchase price of that painting and the cash received are utterly irrelevant to the "financial interest in the relief sought," or in other words, the loss suffered in the acquired shares.

[7] While Oklahoma Firefighters may challenge the fact Boston modified its loss calculation after the 60-day deadline, it would be inequitable to hold Boston to its initial conservative estimate

6

2. **Oklahoma Firefighters' Erroneous Application of the PSLRA Lookback on August 27, 2025, September 4, 2025, and November 5, 2025 Inflated Its Loss by More than $13,000**

Oklahoma Firefighters' opposition asserts that its loss report "appropriately calculates losses using the statutorily mandated formula." ECF No. 52 at 4 n.2. This is simply not the case. In its opposition, Oklahoma Firefighters attempts to frame the discrepancy as a mere choice of dates, intimating that the errors cited by Boston are due to Oklahoma Firefighters using "a Look Back Price of $20.13 per share whereas Boston used a lower Look Back Price of $19.9452 [sic] per share." *Id.* at 5. Not so. Even adopting Oklahoma Firefighters' *own* designated lookback period, Oklahoma Firefighters' counsel misapplied the PSLRA damages provision to inflate the losses on its sales dated August 27, September 4, and November 5, 2025.

---

while simultaneously permitting Oklahoma Firefighters to rely on an untimely corrected Certification to remedy transaction errors, maintain its own statutory miscalculations, and pivot from net loss arguments to the *Lax* factors — all after gaining the benefit of a one-day filing advantage. Whether this Court evaluates the parties based solely on their initial Certifications (which Oklahoma Firefighters was forced to correct two weeks after the deadline) or on their most recent merits-based positions, Boston emerges as the most adequate lead plaintiff. *Compare Salem v. Methode Elecs., Inc.*, 2025 WL 368955, at *3 (N.D. Ill. Feb. 3, 2025) (Ellis, J.) ("the Court follows the majority approach and refuses to consider the Michigan Retirement Systems' modified certification filed after the PSLRA deadline") *with City of Sterling Heights Gen. Emps.' Ret. System v. Hospira, Inc.*, 2012 WL 1339678, at *3 (N.D. Ill. Apr. 18, 2012) (St. Eve, J.) (approving of modified lead plaintiff proposal submitted after the 60-day deadline that clarified claimed losses (by combining movant losses together) where initial motions were timely filed) *and Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at *2 (N.D. Ill. June 26, 2018) (Dow, J.) (same). And to be clear, there is nothing inaccurate or inconsistent in Boston's certification. ECF No. 25-1. The PSLRA requires lead plaintiff movants to provide certifications listing "the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C § 78u-4(a)(2(A). Boston accurately listed its transactions. The only variable is the cost basis — the opening price of James Hardie stock, or the closing price of James Hardie stock. Here, the Court-appointed Lead Plaintiff will be duty-bound to argue the more favorable closing price applies.

7

The PSLRA is unambiguous. It explicitly instructs Class members on how to calculate losses for shares acquired during the Class Period and subsequently sold within 90 days of the disclosure of the fraud. Under 15 U.S.C. § 78u-4(e)(2), if a Class member sells its securities prior to the end of the 90-day "lookback" period, the damages cannot exceed the difference between the purchase price and the ***average trading price of the security up to the day of the sale***. Consequently, a higher lookback average necessarily decreases an investor's loss by narrowing the gap between the purchase and sale price. According to Oklahoma Firefighters' own submission, it sold its entire position of 79,551 shares within this 90-day period. The PSLRA therefore unequivocally required Oklahoma Firefighters to value these sales at the higher of the actual sale price or the running average price up to the date of each sale. Ignoring this statutory text, Oklahoma Firefighters' counsel applied flat prices of either $20.36 or $20.13 for its sales. This methodology is plainly incorrect because, even under Oklahoma Firefighters' chosen period, the relevant share price average was significantly higher on three specific days:

| Date of Sales | Shares Sold | Price Claimed by Oklahoma Firefighters | Correct Price Under Oklahoma Firefighters' Designated PSLRA Lookback Period (8/19/2025 – 11/17/2025) | Loss Overstatement Amount |
|---|---|---|---|---|
| 08/27/2025 | 4,600 | $20.36 | $21.09 | **$3,364.44** |
| 09/04/2025 | 271 | $20.13 | $20.58 | **$121.49** |
| 11/05/2025 | 26,129 | $20.13 | $20.51 | **$9,994.34** |
| Total | | | | **$13,480.27** |

Whether these miscalculations resulted from a misunderstanding of the law or a strategic attempt to boost its loss just enough to exceed Boston's, the result is the same: Oklahoma Firefighters' counsel inflated its loss on these sales by more than $13,480. As courts around the

8

4935-8417-4219.v1

country have held, providing an artificially inflated loss calculation through the misapplication of the PSLRA is grounds for disqualification. Instead of conceding its error, counsel for Oklahoma Firefighters doubles down to claim it correctly applied the PSLRA's damage provision. This refusal to acknowledge its blatant mathematical and legal misstep further proves its inadequacy as a Class fiduciary. *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration by* 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (disqualifying lead plaintiff movant who took "nearly two weeks to supply corrected figures"); *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) ("Minor or not – and the Court by no means finds the numerous and varied errors minor – the errors nonetheless speak[ ] to a level of carelessness.").[8] Boston remains the most adequate plaintiff to lead this Class.

## II.    CONCLUSION

Boston maintains the largest financial interest in this litigation, totaling $616,480 when calculated using standard, GAAP-compliant valuation methods. Because Oklahoma Firefighters

---

[8]    Even after submitting a ***revised*** list of Oklahoma Firefighters' sworn Class Period transactions (ECF No. 38-1), there remain questions as to its counsel's ability to transparently and cogently substantiate Oklahoma Firefighters' losses. Specifically, Oklahoma Firefighters' revised Certification (ECF No. 38-1) includes a purchase of 17,904 shares on August 4, 202**4** (a purchase that clearly falls outside of the Class Period (May 20, 2025 to August 18, 2025)):

| 07/10/2023 | Buy | 995 | $26.47 |
| 08/04/2024 | Buy | 17,905 | $26.34 |
| 08/05/2025 | Buy | 5,871 | $27.08 |

This representation is at odds with its counsel's loss representation, which credits the purchase as a Class Period transaction occurring on August 5, 202**5** and claims over $90,000 in losses based upon that purchase. While this may be yet just another example of its counsel's uncorrected "typographical error[s]," (ECF No. 38) it reaffirms the fact that counsel has yet to enable its client to comply with this most basic of the PSLRA's requirements. Any attempt to do so now – which would be its third bite at the apple – is simply too little, too late.

has failed to provide "exacting proof" to challenge Boston's adequacy or typicality, the statutory presumption that Boston is the most adequate lead plaintiff remains unrebutted. Accordingly, the Court should appoint Boston as Lead Plaintiff and approve its selection of counsel.

Dated: January 30, 2026

Respectfully submitted,

**ROBBINS GELLER RUDMAN**
**& DOWD LLP**

/s/ Frank A. Richter
James E. Barz (IL BAR #6255605)
Frank A. Richter (IL BAR #6310011)
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: (630) 696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
Danielle S. Myers (ILND-GB-5711)
Michael Albert
655 W. Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

*Proposed Liaison Counsel for the Class*

10

4935-8417-4219.v1

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville (admitted *pro hac vice*)
Connor C. Boehme (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
fmcconville@labaton.com
cboehme@labaton.com

*Counsel for Proposed Lead Plaintiff and*
*Proposed Lead Counsel for the Class*

11

4935-8417-4219.v1