**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LABORERS' DISTRICT COUNCIL AND CONTRACTORS' PENSION FUND OF OHIO, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>JAMES HARDIE INDUSTRIES PLC., AARON ERTER, and RACHEL WILSON,<br><br>      Defendants. | Case No. 1:25-cv-13018<br><br>Hon. LaShonda A. Hunt<br><br><u>CLASS ACTION</u><br><br>**OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM'S REPLY TO COMPETING LEAD PLAINTIFF MOTION** |

Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters") submits this reply memorandum in further support of its motion for appointment as lead plaintiff and in opposition to the motion by the Boston Retirement System ("Boston").

Just as anticipated, Boston has resorted to an undisclosed accounting gimmick to make its losses appear greater than Oklahoma Firefighters'. Without revealing its methodology or calculations to the Court, Boston has deceptively manipulated the time period for which it calculates the lookback price for Oklahoma Firefighters and Boston. It uses one time period to calculate its own losses (beginning on August 20, 2025), but a different time period (beginning on August 19, 2025) to calculate Oklahoma Firefighters' losses. As explained below, by using these different time periods, Boston understates Oklahoma Firefighters' losses and inflates its own losses.

Of course, this is highly improper and unorthodox. By using the same time period to calculate the lookback price (August 20, 2025 to November 17, 2025) that Boston has consistently used to calculate its own losses, and using Boston's own preferred methodology, Oklahoma Firefighters' losses actually *increase to $551,520.06,* which is significantly greater than Boston's $530,844.76 loss. Conversely, using the same August 19, 2025 to November 16, 2025 time period to calculate losses, Oklahoma Firefighters' losses are $530,937.75 and Boston's losses shrink to $516,718.81.

Only by deceptively using different time periods to calculate the lookback price is Boston able to even suggest it has a higher loss. This Court should not countenance such shenanigans. *Any fair comparison of losses must be done on an apples-to-apples basis with both movants using the same methodology.* Doing so demonstrates that Oklahoma Firefighters has the largest loss.

1

What is more, Boston completely ignores the *Lax* Factors to assess financial interest (no surprise: Oklahoma wins on every measure) and hides what it actually paid for its AZEK shares (which were converted into James Hardie common stock). The only way Boston thinks it can win is through distortion and deception.

Finally, Boston's new assertion that it actually paid more for its James Hardie shares than originally claimed—$28.08 instead of $26.95—is disingenuous. *First*, Boston did not pay that amount for its shares, it likely paid a much lower amount for its AZEK shares that were converted into James Hardie common stock. But, tellingly, Boston refuses to reveal what it actually paid for its AZEK shares, rendering its loss estimate inaccurate and incomplete. *Second*, courts disallow parties to change their losses after the PSLRA's 60-day lead plaintiff deadline and this Court should do the same. *Salem v. Methode Elecs., Inc.*, No. 24 C 7696, 2025 WL 368955, at *3 (N.D. Ill. Feb. 3, 2025) ("the majority of courts refuse to consider modifications to…claimed losses made after the PSLRA lead plaintiff motion deadline."). Boston obviously resorts to these gimmicks because it knows it has the lower loss.

Since Oklahoma Firefighters has the largest financial interest in the relief sought by the class, and Boston has not and cannot rebut the presumption, Oklahoma Firefighters' motion should be granted, and it should be appointed lead plaintiff.

## I.    Oklahoma Firefighters Has the Largest Financial Interest

Trying to find a way to show how its losses are larger than Oklahoma Firefighters', Boston resorts to a misleading, goalpost-shifting comparison using two different lookback periods: one for itself (August 20, 2025 through November 17, 2025), but a different one for Oklahoma Firefighters (August 19, 2025 through November 16, 2025). This sleight of hand inflates the

retained value of Oklahoma Firefighters' shares[1] because it includes a trading day, August 19, 2025, before James Hardie stock crashed, which undercounts Oklahoma Firefighters' financial interest. But as we demonstrate below, using an apples-to-apples comparison—the same lookback period for both Oklahoma Firefighters and Boston— Oklahoma Firefighters' losses are higher than Boston's. In fact, even when properly evaluating Oklahoma Firefighters' losses using Boston's preferred methodology and using *different* lookback periods, Oklahoma Firefighters' losses are still higher than Boston's.

Under any fair comparison at all, Oklahoma Firefighters' losses are higher than Boston's, entitling Oklahoma Firefighters to the now unrebutted presumption that it should serve as lead plaintiff.

### A. Oklahoma Firefighters' Losses Are Higher Than Boston's Even Using Boston's Methodology And Using Boston's Lookback Period

Boston's opposition relies on an unstated, hidden inconsistency. When Boston calculated its own losses, it correctly started the lookback period on August 20, 2025, the first day James Hardie stock dropped after the alleged corrective disclosure, falling to $18.64 per share. ECF No. 25-2 (Boston using the $19.9452 90-day lookback average, which it (correctly) calculated by averaging the closing price of James Hardie stock between August 20, 2025 and November 17, 2025).[2]

Now, when attacking Oklahoma Firefighters' losses, Boston (without telling the Court) uses a *different* lookback period but only for Oklahoma Firefighters: August 19, 2025 through

---

[1] A higher lookback price means stock has a higher value and thus a lower loss. A lower lookback price equates to a higher loss.

[2] For the Court's convenience, **Exhibit A**, attached, provides the history of James Hardie's stock price during the relevant period, and includes the rolling average share prices for both the 8/19/25 and 8/20/25 lookback periods at issue).

November 16, 2025. ECF No. 53 at 4-6. James Hardie common stock closed at $28.43 per share on August 19, 2025. This is particularly impactful when using Boston's preferred PSLRA damages limitation methodology, where the $28.43 price plays an outsized role in the average applied to Oklahoma Firefighters' early post-class period sales.

Because Boston asks the Court to use the PSLRA's damages limitation methodology[3] to estimate losses (*i.e.*, applying the higher of the sales price or the lookback average on the day the shares were sold in the loss calculation), including August 19, 2025 in the lookback period has an outsized effect on that average, since James Hardie stock did not fall on August 19, and was still inflated on that day. (The stock closed at $28.43 on August 19 and $18.64 on August 20). It is only through this apples-to-oranges distortion that Boston can manufacture a scenario where its losses appear greater. By silently toggling the start of the lookback period only for Oklahoma Firefighters, Boston inflates Oklahoma's retained value—and thereby understates Oklahoma Firefighters' losses—while shielding its own.

But when calculated using the strict PSLRA rolling average Boston demands, using the correct August 20-November 17 lookback period adopted by Boston, Oklahoma Firefighters' loss is higher than the conservative estimate provided in Oklahoma Firefighters' opening motion:

---

[3] Boston conflates the fourth *Lax* factor with the ultimate damages in the litigation. *See Peters v. Twist Bioscience Corp.*, No. 5:22-CV-08168-EJD, 2023 WL 4849431, at *5 (N.D. Cal. July 28, 2023) (distinguishing between "loss calculation" and "damages" and clarifying: "the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security.") (quoting 15 U.S.C. § 78u-4(e)(1)). Oklahoma Firefighters' method of calculating its loss is thus exactly in line with the standard LIFO analysis used to measure financial loss under the *Lax* factors, it was not a "gross error," as Boston claims. *Id.*; *see also Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 599 (N.D. Ill. 2009).

**Impact on Oklahoma's Loss Estimate By Using Boston's Method *With Boston's Lookback Period***

| Date | Shares | Actual Sales Price (1) | Rolling Lookback Price (2) | Boston's Loss Method (3) | Oklahoma's Orig. Figure (4) | Difference (5) | Impact on Loss Estimate |
|---|---|---|---|---|---|---|---|
| 8/27/25 | 4600 | $ 20.3685 | $ 19.8683 | $ 20.3685 | $ 20.3600 | $ 0.01 | $ 39.10 |
| 9/4/25 | 271 | $ 19.4600 | $ 19.8645 | $ 19.8645 | $ 20.1300 | $ (0.27) | $ (71.95) |
| 9/29/25 | 26332 | $ 18.7230 | $ 19.6036 | $ 19.6036 | $ 20.1300 | $ (0.53) | $ (13,861.16) |
| 10/1/25 | 22219 | $ 19.6401 | $ 19.5930 | $ 19.6401 | $ 20.1300 | $ (0.49) | $ (10,885.09) |
| 11/5/25 | 26129 | $ 18.6963 | $ 20.3685 | $ 20.3685 | $ 20.1300 | $ 0.24 | $ 6,231.77 |
| **Total** | **79551** | | | | | | **$ (18,547.34)** |

(1) The price Oklahoma actually received in the post-class period transaction.
(2) The "average trading price of the security **up to the day of sale,"** ECF No. 53 at 4, using Boston's 8/20-11/17 lookback period (Exhibit A).
(3) The higher of 1 or 2 (having the effect of showing lower losses between the two).
(4) The figure Oklahoma used in its original loss estimate, ECF No. 34-3.
(5) The difference between Boston's method and Oklahoma's method. A positive difference reduces losses, a negative one increases them.
(6) The difference in (5) multiplied by the number of shares at issue.

As shown in the table above, using Boston's preferred calculation, but doing so with the correct, apples-to-apples lookback period used by Boston, Oklahoma Firefighters' losses are $18,547.34 higher than what was previously presented: Oklahoma Firefighters has $551,520.06 in losses versus Boston's $530,844.76.

**B. Even Using The August 19-November 16 Lookback Period, Oklahoma Firefighters' Losses Are Higher**

For the reasons explained above, Boston used the correct lookback period in making its original loss estimate.[4] ECF No. 25-2. James Hardie stock closed on August 19, 2025 at $28.43, before the corrective disclosure was made after the market closed. It was on August 20, 2025 that the market reacted to the news, with James Hardie stock falling to close at $18.64. ECF No. 1 at ¶¶5, 39, 45.

---

[4] The software used to calculate Oklahoma's original loss estimate, ECF No. 34-3, started the lookback period on August 19, 2025 rather than August 20, 2025. While the corrective disclosure came out on August 19, 2025, it came out after the market closed. In any amended complaint, those who purchased James Hardie stock during the trading day on August 19, before the news was later revealed, would be included in the class.

But even if the Court accepts Boston's premise that it should use the pre-crash August 19, 2025 date to start the lookback period, that period must be applied equally to both movants (*i.e.*, estimating Boston's losses using the $20.1316 lookback average between August 19 and November 16, 2025). This still results in larger losses for Oklahoma Firefighters:

**Impact on Oklahoma's Loss Estimate By Using Boston's Method *With Alternative Lookback Period***

| Date | Shares | Actual Sales Price (1) | Rolling Lookback Price (2) | Boston's Loss Method (3) | Oklahoma's Orig. Figure (4) | Difference (5) | Impact on Loss Estimate |
|------|--------|------------------------|----------------------------|--------------------------|------------------------------|----------------|-------------------------|
| 8/27/25 | 4600 | $ 20.3685 | $ 21.0914 | $ 21.0914 | $ 20.3600 | $ 0.73 | $ 3,364.44 |
| 9/4/25 | 271 | $ 19.4600 | $ 20.5783 | $ 20.5783 | $ 20.1300 | $ 0.45 | $ 121.49 |
| 9/29/25 | 26332 | $ 18.7230 | $ 19.9079 | $ 19.9079 | $ 20.1300 | $ (0.22) | $ (5,848.34) |
| 10/1/25 | 22219 | $ 19.6401 | $ 19.8781 | $ 19.8781 | $ 20.1300 | $ (0.25) | $ (5,596.97) |
| 11/5/25 | 26129 | $ 18.6963 | $ 20.5125 | $ 20.5125 | $ 20.1300 | $ 0.38 | $ 9,994.34 |
| **Total** | **79551** | | | | | | **$ 2,034.97** |

(1) The price Oklahoma actually received in the post-class period transaction.
(2) The "average trading price of the security **up to the day of sale**," ECF No. 53 at 4, using the 8/19-11/16 lookback period (Exhibit A).
(3) The higher of 1 or 2 (having the effect of showing lower losses between the two).
(4) The figure Oklahoma used in its original loss estimate, ECF No. 34-3.
(5) The difference between Boston's method using the 8/19-11/16 lookback period and Oklahoma's method. A positive difference reduces losses, a negative one increases them.
(6) The difference in (5) multiplied by the number of shares at issue.

While Oklahoma Firefighters' loss estimate would be reduced by $2,034.97 under this method (*i.e.*, it would be $530,937.75), the Court would need to apply the same lookback period to Boston's loss estimate. The 90-day lookback average between August 19 and November 16 is $20.1316 per share. *See* Exhibit A. This also reduces Boston's loss estimate:

| Boston's Total James Hardie Shares | Price Purportedly Paid | 90-Day Lookback Value | Loss Per Share | Total Estimated Losses |
|------------------------------------|------------------------|------------------------|----------------|------------------------|
| 75,783 | $26.95 | $20.1316 | ($6.8184) | ($516,718.81) |

Thus, even using the alternative August 19 to November 16 lookback period, Oklahoma Firefighters' losses are still $14,218.94 higher than Boston's losses.

Whether the Court uses August 20 or August 19 to start the lookback period, so long as it applies the lookback periods equally, Oklahoma Fighters has the larger financial interest.

**C. Even If The Court Allowed Boston To Use Different Lookback Periods For Oklahoma Firefighters and Boston, Oklahoma Still Has Larger Losses**

Boston's attempted manipulation even fails on its own terms. Boston claims, without presenting its calculation, that "if the higher (and correct) lookback average price was applied for Oklahoma Firefighters' sales on each of these days, Oklahoma Firefighters' financial interest is unquestionably lower than Boston's," ECF No. 53 at 5-6. This is false. Even applying the August 19-November 16 lookback period only to Oklahoma Firefighters' losses (but doing so for each sale day, rather than cherry picking days as Boston seems to have done), Oklahoma Firefighters' losses of $530,937.75 (as shown above) are still higher than Boston's self-reported $530,844.76 losses which were calculated using the more favorable August 20-November 17 lookback period. Boston contrived a methodology specifically designed to defeat Oklahoma Firefighters, and the math, when accurately presented, still does not work.

There is simply no fair way to get to a higher loss for Boston in any reasonable comparison between the two. It is telling that Boston's 15-page opposition does not contain a single table calculating Oklahoma Firefighters' loss under Boston's preferred methodology. Boston omitted any calculation because any scrutiny of its arithmetic is fatal to its argument: no matter which date is used, so long as the periods are consistently applied and the math is performed correctly, Oklahoma has the larger financial interest.

**D. Oklahoma Firefighters' Losses Are Higher Than Boston's Using Either 90-Day Lookback Average On An Apples-to-Apples Comparison**

As previously explained in our opposition, using the simple 90-day lookback price to evaluate retained value (rather than Boston's preferred PSLRA damages limitation methodology) on an apples-to-apples basis also shows Oklahoma Firefighters' losses are higher than Boston's using either 90-Day Lookback Average price (*see* ECF No. 52 at 4-6):

| Movant | $20.13 Lookback Price (August 19-November 16) | $19.9452 Lookback Price (August 20-November 17) |
|---|---|---|
| **Oklahoma Firefighters** | **$532,972.72** | **$547,673.74** |
| Boston | $516,840.06 | $530,844.76 |

### E. Oklahoma Firefighters' Financial Interest Is Also Larger Than Boston's Under Every One of the *Lax* Factors

Oklahoma Firefighters' financial interest remains larger than Boston's under every *Lax* factor, including: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *see also* ECF No. 52 at 2-6.

Despite Boston's attempt to complicate the fourth *Lax* factor, the LIFO net loss method chosen by both parties to calculate approximate losses is straightforward. To calculate LIFO losses, the first sales made during the Class Period are subtracted from the last purchases made during the Class Period, then, "shares that were bought during the class period but were not sold during the class period are accounted for as if they had been sold at the average price of the shares in the 90 calendar days following the class period." *Tellabs, Inc.*, 256 F.R.D. at 599; *see also Twist Bioscience*, 2023 WL 4849431, at *5 ("[T]he award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security.") (citing 15 U.S.C. § 78u-4(e)(1)). This is exactly how Oklahoma Firefighters calculated its losses.

### F. Boston's Last-Ditch Effort To Drum Up A New Loss Estimate Also Fails

Although Boston's attempted manipulations fail substantively, they are also procedurally improper. This is the very misconduct Boston wrongly attributed to Oklahoma Firefighters—a "deliberate attempt" to belatedly boost its own financial interest by "just enough" to exceed Oklahoma Firefighters' losses. *See* ECF No. 53 at 6.

Unable to show higher losses than Oklahoma Firefighters, Boston resorts to another manipulation by attempting to belatedly change the price it purportedly paid to acquire its James Hardie common stock, increasing the price from $26.95 to $28.08. Boston now argues that it is entitled to claim the "closing price" on the day its AZEK shares were converted to increase its claimed net funds expended from $2,042,351 to $2,127,986.64. *See* ECF No. 53-1. This last-minute attempt to increase its losses is improper.

Boston's gamesmanship should not be countenanced. It originally represented that its James Hardie shares were worth $26.95 per share but, realizing it has the lower financial interest, now wants to change the rules of the game, pick a new more favorable number for itself, and claim a larger loss. Courts strongly disfavor these kinds of games and employ "the methodology it proposed before realizing which methodology would come out in its favor." *See San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, No. 22 CIV. 6339 (JPC), 2023 WL 3750115, at *5 (S.D.N.Y. June 1, 2023) (rejecting "revised position to calculate recoverable loss" because it "would further encourage such gamesmanship… This type of opportunism ... is generally unfavored in appointing lead plaintiffs," and "courts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition after a new movant comes in alleging a greater loss.") (internal citations omitted).

This type of "opportunistic" loss manipulation "would effectively render the strict timeliness set forth in the PSLRA meaningless." *Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 WL 31356419, at *3 (N.D. Ill. Oct. 17, 2002) ("the court will not consider the candidates' amendments of their amount of financial loss after the filing deadline"); *see also Salem,* 2025 WL 368955, at *3 ("the majority of courts refuse to consider modifications to…claimed losses made after the PSLRA lead plaintiff motion deadline."); *Hedick v. Kraft Heinz Co.*, No. 19-CV-1339, 2019 WL

4958238, at *5 (N.D. Ill. Oct. 8, 2019) (same); *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021) ("Presenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs.").

Furthermore, as Oklahoma Firefighters previously argued, the Court still does not know Boston's true net funds expended because Boston will not disclose when it purchased its AZEK shares or how much it actually paid for those shares. To truly evaluate Boston's overall financial interest, Boston should disclose how much it paid for its AZEK shares and when it purchased them, and the Court should also consider the $26.45 per share in cash Boston received in the acquisition.[5] This is because evaluating financial interest requires calculating "the difference between the amount spent to purchase [the] shares and the amount received for the sale of shares" or the amount those shares were worth after the fraud was revealed. *See Chandler v. Ulta Beauty, Inc.*, 2018 WL 3141763 at *3 (N.D. Ill. June 26, 2018); *City of Sterling Heights General Employees Retirement Sys. v. Hospira, Inc.* 2012 WL 1339678, * 4 (N.D. Ill. Apr. 18, 2012). The only true way to measure Boston's actual financial interest is for it to reveal how much it spent to purchase its AZEK shares—an amount it, tellingly, refuses to reveal. There is no reasonable explanation for Boston's loss calculations other than the very "gamesmanship" prohibited by courts.

---

[5] Boston received 1.034 shares of James Hardie common stock for every share of AZEK it converted, which means Boston converted 78,369 shares of AZEK stock. As a result, Boston received approximately $2,072,612 in cash in the exchange, which dramatically reduces its financial interest in this case.

## II.     Conclusion

For the above reasons, and for those stated in Oklahoma Firefighters' motion and opposition brief, the Court should: (1) grant Oklahoma Firefighters' motion for appointment as Lead Plaintiff; (2) approve its selection of Block & Leviton LLP as Lead Counsel; (3) approve Carroll Shamberg as Liaison Counsel; and (4) grant such other relief as the Court may deem just and proper.

DATED: January 30, 2026

Respectfully submitted,

/s/ Katrina Carroll
Katrina Carroll
**CARROLL SHAMBERG LLC**
111 W. Washington Street
Suite 1240 Chicago, IL 60602
(872) 215-6205 phone
katrina@csclassactions.com

*Local Counsel for Plaintiff and Proposed Liaison Counsel for the Class*

Jeffrey C. Block
Jacob A. Walker
Sarah E. Delaney
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com
sarah@blockleviton.com

*Counsel for Oklahoma Firefighters Pension and Retirement System and Proposed Lead Counsel for the Class*

11