## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LABORERS DISTRICT COUNCIL AND
CONTRACTORS PENSION FUND
OF OHIO, individually and on behalf of
all others similarly situated,

     Plaintiff,

v.

JAMES HARDIE INDUSTRIES PLC.,
AARON ERTER, and RACHEL WILSON,

     Defendants.

Case No. 25 C 13018

Hon. LaShonda A. Hunt

## ORDER

Upon consideration of the motions for appointment of lead plaintiff and approval of selection of counsel, for the reasons stated below, Boston Retirement System's motion (Dkt. 25) is denied, and Oklahoma Firefighters Pension and Retirement System's motion (Dkt. 33) is granted.

## STATEMENT

On October 24, 2025, Laborers' District Council and Contractors' Pension Fund of Ohio filed this putative class complaint for violation of the federal securities law in connection with the purchase of James Hardie Industries PLC ("James Hardie") stock, with a proposed class period from May 20, 2025 through August 18, 2025. (Dkt. 1). Boston Retirement System ("Boston") and Oklahoma Firefighters Pension and Retirement System ("Oklahoma") each filed timely motions seeking appointment as lead plaintiff and approval of their respective lead counsel.

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") "provides guidelines for the appointment of a lead plaintiff" and lead counsel in private securities class action litigation. *Mortimer v. Diplomat Pharmacy Inc.*, No. 19 C 1735, 2019 U.S. Dist. LEXIS 120543, 2019 WL 3252221, at *1 (N.D. Ill. July 19, 2019) (citing 15 U.S.C. § 78u-4(a)(3)). If a member of the purported class seeks to serve as the lead plaintiff, the Court must "appoint as lead plaintiff the member or members of the purported plaintiff class that [it] determines to be most capable of adequately representing the interests of class members," *i.e.*, the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), (a)(3)(B)(i). "The PSLRA establishes a rebuttable presumption that the 'most adequate plaintiff' is the 'person or group of persons' who [1] 'has either filed the complaint or made a motion in response to a notice,' [2] 'has the largest financial interest in the relief sought by the class,' and [3] 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Mortimer*, 2019 U.S. Dist. LEXIS 120543, 2019 WL 3252221, at *1

1

(quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). "This presumption may be rebutted, however, if a member of the purported class establishes that the 'presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). The PSLRA "further provides that the 'most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(v)).

Looking to the elements of the rebuttable presumption, the only contested point between Boston and Oklahoma is the largest financial interest. Based on the Court's review of the original and updated submissions and oral argument held on February 12, 2026, the Court concludes that Oklahoma has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

While the PSLRA does not define "largest financial interest," courts generally understand it to mean "suffered the greatest loss." *In re Boeing Co. Aircraft Secs. Litig.*, No. 19 C 2394, 2019 U.S. Dist. LEXIS 198259, 2019 WL 6052399, at *4 (N.D. Ill. Nov. 15, 2019). Most courts consider the following factors when assessing whether a party has the largest financial interest:

(1) the total number of shares purchased during the class period;

(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);

(3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and

(4) the approximate losses suffered.

*Colwell v. Exicure Inc.*, No. 21 C 6637, 2023 U.S. Dist. LEXIS 46301, 2023 WL 2572454, at *3-4 (N.D. Ill. Mar. 20, 2023) (quoting *Mortimer*, 2019 U.S. Dist. LEXIS 120543, 2019 WL 3252221, at *1).

Regarding the number of shares, Boston represents that it purchased 75,783 shares during the class period, (Boston's Mem. Supp. Mot., at 236, at Dkt. 26), and Oklahoma represents that it purchased 89,895 shares, (Oklahoma's Opp'n, at 436, Dkt. 52). This factor therefore favors Oklahoma. Next, the net shares purchase factor also falls in favor of Oklahoma as its net shares purchased is 79,551, (*Id.*), while Boston's is 75,783, (Boston's Mem. Supp. Mot., Ex. B, at 72, Dkt. 25-2). The third factor—the net funds expended—also favors Oklahoma as it expended $2,151,331, (Oklahoma's Opp'n, at 436), while Boston expended only $2,042,351, (Boston's Mem. Supp. Mot., Ex. A, at 70, Dkt. 25-1).

Finally, the parties go to great lengths to dispute the final factor—the approximate losses suffered. Oklahoma argues that its losses are $532,972.72. (Oklahoma's Mot., Ex. C, at 368, Dkt. 34-3). Boston first argued that its losses amounted to $530,844.76. (Boston's Mem. Supp. Mot., Ex. B, at 72). However, in its opposition to Oklahoma's motion to be appointed lead counsel,

2

which Boston filed (with leave of Court) after the statutory deadline, Boston claims that it lost $616,479.55. (Boston's Reply, Ex. A, at 460, Dkt. 53-1). As such, the Court must determine which figure supplied by Boston is proper.

Boston argues that it used the same valuation method as Oklahoma to arrive at its first loss figure, but later realized that method was incorrect because it relied upon "a valuation methodology that . . . artificially eliminates" damages. (Boston's Reply, at 491 n.5). Boston further posits that Oklahoma's advocacy for the method is an "attempt to undercut Boston's financial interest . . . at the expense of class-wide recovery." (*Id.*). In essence, Boston argues that the first method it used is incorrect because it utilizes the opening price of James Hardie stock rather than the closing price, which allegedly decreases damages class-wide. Under Boston's logic, Oklahoma is using that number solely to become lead counsel, rather than as an advocate of the class, because Oklahoma's utilization of that method would reduce class-wide damages. Not so.

Boston cites two cases in support of this argument. (*Id.*) (citing *Guzman v. Ford Motor Co.*, 801 F. Supp. 3d 706 (E.D. Mich. 2025); *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014)). However, both cases (and the quoted text altered by Boston) refer to a potential lead plaintiff erroneously advocating for a shortened class period, which would reduce class-wide damages, rather than a certain share price. *See Guzman*, 801 F. Supp. at 714 (stating that the court is troubled by the "advocacy of a shortened class period" and that "[s]uch advocacy benefits Ferrante's position as lead plaintiff while potentially jeopardizing at the starting gate the interests of many putative class members"); *Marcus*, 2014 WL 11394911, at *7 (stating that a party's "argument that the Short Class Period is more appropriate than the Long Class Period is troubling" and this "self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from" appointing that party as lead plaintiff).

Significantly, neither case stands for the proposition that a party's loss estimate is binding or precludes further analysis or conflicting expert opinions at later stages of litigation. In fact, courts have found the opposite. *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *6 n.8 (N.D. Cal. Feb. 15, 2011) ("The Court agrees that its calculations here are not a final decision on loss calculations or loss causation."); *See also In re McKesson*, 97 F. Supp. 2d 993, 996 (N.D. Cal. 1999) ("[T]his discussion is limited to the resolution of the lead plaintiff motions, not to ultimate questions of liability or damages."); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) ("The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions.").

Oklahoma, on the other hand, argues that the methodology used by both parties in their initial briefs is the correct one for the evaluation of lead counsel. It further urges the Court to wholly disregard Boston's second loss figure as it was filed after the PSLRA's 60-day lead plaintiff deadline. (Oklahoma's Reply, at 531, Dkt. 56). The Court agrees and finds that Boston's approximate losses for purposes of the lead counsel appointment is $530,844.76 rather than $616,479.55.

"Although courts are not uniform in their approach to these circumstances, the majority of courts refuse to consider modifications to certifications or claimed losses made after the PSLRA lead plaintiff motion deadline." *Salem v. Methode Elecs., Inc.*, No. 24 C 7696, 2025 WL 368955, at *3 (N.D. Ill. Feb. 3, 2025); *see also Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 U.S. Dist. LEXIS 19884, 2002 WL 31356419, at *3 (N.D. Ill. Oct. 17, 2002) ("[T]he court will not consider the candidate's amendments of their amount of financial loss made after the filing deadline."); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The plain language of the statute precludes consideration of financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed after the [PSLRA deadline]."). *But see Lim v. Hightower*, No. 23 C 1454, 2023 U.S. Dist. LEXIS 207677, 2023 WL 7979869, at *2 n.4 (N.D. Ohio Nov. 16, 2023) (finding that the court could consider a revised loss chart, after the original loss chart contained inadvertent errors, as the revised loss chart contained the same transactions initially reported). "The reasoning behind these majority decisions is to preserve the strict timeliness requirements of the PSLRA." *Salem*, 2025 WL 368955, at *3.

The Court finds the majority approach persuasive and thus declines to consider Boston's modified claimed loss filed on January 23, 2026—or one month after the PSLRA deadline—asserting a much higher number. (*See* Boston's Opp'n, Dkt. 53). Nothing prevented Boston from presenting this theory in its initial filing, which was submitted a day early. Indeed, Boston waited until after Oklahoma filed its competing calculation to contend that a different method (that also gave Boston a greater loss than Oklahoma) was more appropriate. As such, using only the alleged losses asserted before the PSLRA lead plaintiff motion deadline, Boston suffered approximately $530,844.76 in losses, (Boston's Mem. Supp. Mot., Ex. B, at 72), and Oklahoma suffered approximately $532,972.72 in losses. (Oklahoma's Mot., Ex. C, at 368). As Oklahoma suffered the largest loss, the Court finds all four factors fall in Oklahoma's favor; therefore, it has the largest financial interest. *See Hedick v. Kraft Heinz Co.*, No. 19-cv-1339, 2019 WL 4958238, at *3 (N.D. Ill. Oct. 8, 2019) (noting that among the four factors courts consider in determining the "largest financial interest," most courts agree that "the approximate losses suffered[ ] is the most salient factor").

For all the foregoing reasons, the Court appoints Oklahoma Firefighters Pension and Retirement System as lead plaintiff for the class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii) and approves its selection of Block & Leviton LLP as lead counsel, and Caroll Shamberg LLC as liaison counsel. Lead counsel shall have the following responsibilities and duties on behalf of Lead Plaintiff and the class: (a) preparing and filing pleadings; (b) briefing and arguing motions; (c) conducting discovery proceedings and depositions; (d) settlement negotiations with counsel for defendants; (e) pretrial proceedings and the trial of this matter; and (f) the supervision of all other matters concerning the prosecution or resolution of this action.

**DATED**: February 17, 2026

**ENTERED**:

LaShonda A. Hunt
LaShonda A. Hunt
United States District Judge

4